have been made; and in Smalley v. Hendrickson, 29 N. J. Law, 371, it was said that where the existence and terms of a parol contract were established the construction is a matter of law for the court. See, also, Kingsbury v. Buchanan, 11 Iowa, 387–395; Dudgeon v. Haggart, 17 Mich. 279.

I think the correct rule to be extracted from the cases is this: If there be any conflict as to the words used, or if the words themselves be ambiguous, the question of intent should be left to the jury. But if the words are clear and explicit, and the only difficulty is in the proper legal inference to be drawn from them, it belongs to the court to give them their proper construction. The fact that in this case one of the terms of the contract, namely, the price to be paid, was omitted, does not render it necessary that the construction of the contract should be left to the jury, if the circumstances surrounding the transaction leave no doubt as to the legal inference to be drawn from the conversation. It is true, as suggested by plaintiff's counsel, that the order in this case, standing alone, was consistent either with a gift to the defendant with an intent to charge him a proportionate price on the cost of the whole edition, or with an intent to charge him only with the cost of the extra copies. It is not suggested by either party that a gift was intended. I have already stated the reasons which lead me to hold that, as the plaintiff had already agreed to furnish the defendant the cost of composition in the six copies, it could not charge him the proportionate price of the whole edition. The evidence upon this point is to my mind so decisive, that if the jury should find such to be the intent of the parties, I should feel compelled to set aside the verdict. Under the view I take of the plaintiff's case, it could only be entitled to recover for the extra cost of the thirty copies, and as these copies were never received by the defendant, or tendered by the plaintiff, or, if such tender were ever made, it was accompanied by a demand for the proportionate price of the whole edition. I think the plaintiff is not entitled to recover. Of course, if the defendant received the thirty copies, he would be bound to pay the cost of them. But if they were tendered to him with a demand for the proportionate price of the whole edition, he would not be bound to receive them, and could not be held liable to pay anything. The motion for a new trial must therefore be denied.

---

DEUSTER (BROAD v.). See Case No. 1,908.

DEVAL (TYLER v.). See Case No. 14,307.

DE VALLE (CROSS v.). See Cases Nos. 3,430 and 3,431.

---

## Case No. 3,835a.

DE VARAIGNE v. FOX.

[See Case No. 3,836.]

## Case No. 3,836.

### DE VARAIGNE v. FOX.

[2 Blatchf. 95.][1]

Circuit Court, S. D. New York. Sept. 30, 1848.

EMINENT DOMAIN—LEGISLATIVE POWER—CHARACTER OF ESTATE ACQUIRED—REVERTER.

1. The right of eminent domain empowers the legislature to devote private property to public use.

2. An act of the legislature of New York, reciting that certain lands were needed by the corporation of the city of New York for the purpose of extending the alms-house establishment of the city, and providing that, on the ascertainment and payment to the owner of the lands, of the loss and damage for taking them, the corporation should be seised of the lands in fee-simple absolute, does not exceed the rightful authority of the legislature.

3. In the exercise of its power to devote private property to public use, the legislature are the exclusive judges of the degree and quality of interest which are proper to be taken, as well as of the necessity of taking it.

[Cited in Brooklyn Park Com'rs v. Armstrong, 45 N. Y. 243.]

4. Where the legislature has conferred an estate in fee simple absolute in the premises taken, it must be assumed that they judged it necessary to do so, to answer the public use contemplated.

5. Such a grant of a fee simple absolute will not be construed as a conditional fee or usufruct, leaving the possibility of a reverter to the original owner on the lapse of the particular use, but will be held to have vested the entire property forever in the grantee.

6. If a change in the destination of the property granted, after a continuance for twenty-six years of the use of it first contemplated, raises any interest or right on the part of the original owner, it is of an equitable character, cognizable only in chancery, and not at law.

[This was an action of ejectment by Maria De Varaigne against Edward Fox.]

In February, 1818, the mayor, aldermen and commonalty of the city of New-York were possessed of certain premises in that city, occupied by them as an alms-house establishment, and presented to the legislature of New-York a memorial praying that a law might be passed authorizing them to enter upon and take possession of certain lands contiguous to the said premises, and hold the same for the use of the said alms-house establishment. On the 21st of April, 1818, an act was passed, entitled "An act authorizing the mayor, aldermen, and commonalty of the city of New-York to take possession of certain lands." The act recited that the corporation was desirous of taking possession of certain lands, the bounds of which were specified, for the purpose of extending the alms-house establishment of the city, and provided that it should be lawful for the corporation, whenever they should judge proper, to take possession of all or any part of the said lands, in the manner prescribed by a prior act in relation to taking lands, passed March 29, 1816 [4 Laws N. Y. p. 52]. Laws

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]